**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **DAVID WEBER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 09-1383-JWL** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security
(Commissioner) denying disability insurance benefits (DIB) and supplemental security
income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security
Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (the Act). Finding no error as
alleged by Plaintiff in the decision of this case, the court ORDERS that judgment shall be
entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the
Commissioner's decision.

**I.      Background**

Plaintiff applied for DIB and SSI on November 29, 2004 alleging disability since
June 1, 2000. (R. 27, 94-97, 490-93). The applications were denied initially and upon

reconsideration, and Plaintiff requested a hearing before an administrative law judge (ALJ).  (R. 27, 42-43, 71, 479, 485).  Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ Edmund C. Werre on June 5, 2007.  (R. 27, 516-17).  At the hearing, testimony was taken from Plaintiff and from a vocational expert.  (R. 27, 516-52).  The ALJ issued his decision on August 24, 2007, finding that Plaintiff has a severe combination of impairments, but that the impairments do not meet or medically equal the severity of any impairment in the Listing of Impairments.  (R. 29-32).  He assessed Plaintiff with the residual functional capacity (RFC) to perform a range of light work restricted by certain postural, environmental, and mental limitations.  (R. 32-38).  He determined that Plaintiff is unable to perform his past relevant work, but that jobs exist in significant numbers in the economy of which Plaintiff is capable of performing.  (R. 38-39).  Therefore, he concluded that Plaintiff is not disabled within the meaning of the Act, and denied his applications.  (R. 39).

Plaintiff disagreed with the ALJ's decision, and sought Appeals Council review.  (R. 21-23).  The Appeals Council denied Plaintiff's request.  (R. 8-11).  Therefore, the ALJ's decision is the final decision of the Commissioner.  (R. 8); Cowan v. Astrue, 552 F.3d 1182, 1184 (10th Cir. 2008).  Plaintiff now seeks judicial review.

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1051-52 (10th Cir. 2009) (citing 42 U.S.C. § 405(g)).  Section 405(g) of the Act provides that, "The findings of the Commissioner as to any fact, if supported by

substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion. Wall, 561 F.3d at 1052; accord, Richardson v. Perales, 402 U.S. 389, 401 (1971); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)). The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and

work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920 (2007); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Id. (quoting Lax, 489 F.3d at 1084.)

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment, and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51.  If claimant's impairment(s) does not meet or equal a listed impairment, the Commissioner assesses RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five-- whether claimant can perform his past relevant work, and whether, when considering vocational factors of age, education, and work experience, he is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (citing Lax, 489 F.3d at 1084).  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show jobs in the national economy within Plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the Commissioner erred in weighing the medical opinions of a treating physician, Dr. Shaikh, and an examining psychologist, Dr. Boll, and in determining that Plaintiff's condition does not meet Listing 12.03 for schizophrenia. The Commissioner argues that the ALJ properly weighed the medical opinions, and properly found that Plaintiff's condition does not meet or equal Listing 12.03, and that substantial evidence in the record supports the ALJ's decision. The court finds no error in the ALJ's consideration of the medical opinions of Dr. Shaikh or Dr. Boll, or in the finding that Plaintiff's condition does not meet the severity of Listing 12.03. Although Plaintiff organized his brief differently than the court, the court addresses the issues raised in the order of the sequential evaluation process, and begins with the ALJ's consideration at step three–whether Plaintiff's condition meets the severity of Listing 12.03.

## III. Step Three

Plaintiff claims the ALJ erred in finding that Plaintiff's schizophrenia does not meet the paragraph B criteria of Listing 12.03 because the ALJ erroneously determined Plaintiff only had mild limitations in activities of daily living. He asserts the ALJ made an improper medical determination that "although Weber was homeless, he was capable of utilizing public shelters, [and] transportation, and was independent in his self-care," and that the ALJ improperly used Plaintiff's minimal daily activities to show that

Plaintiff's condition does not meet or equal a listing.  (Pl. Br. 17) (citing <u>Archer v. Astrue</u>, Civ. A. No. 08-cv-00610-WYD, 2009 WL 1974241, *4-5 (D. Colo. July 6, 2009); and <u>Byron v. Heckler</u>, 742 F.2d 1232, 1235 (10th Cir. 1984)).  Plaintiff cites evidence that Plaintiff is "poorly groomed," "with his long hair and long, bushy mustache and beard," and alleges that this evidence shows "significant difficulty in performing activities of daily living," and "problems with even basic self-care."  <u>Id.</u> (quoting (R. 327, 224)).

The Commissioner notes that Plaintiff makes arguments relating only to one mental functional area (activities of daily living) and does not argue that the evidence shows marked limitations in two of the paragraph B criteria as is required to meet Listing 12.03.  (Comm'r Br. 14).  He goes on to distinguish the cases cited in support of Plaintiff's argument.  <u>Id.</u>  The court agrees with the Commissioner.

In order to meet the criteria of Listing 12.03, Plaintiff's condition must demonstrate "at least two of the following:

1.      Marked restrictions in activities of daily living; or

2.      Marked difficulties in maintaining social functioning; or

3.      Marked difficulties in maintaining concentration, persistence, or pace; or

4.      Repeated episodes of decompensation, each of extended duration."

20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.03(B) (paragraph B criteria of Listing 12.03).

Here, the ALJ discussed whether Plaintiff's condition meets the severity of Listing 12.03, and stated he had considered whether the paragraph B criteria of the listing are

satisfied. (R. 31-32). He found that Plaintiff has mild restrictions in activities of daily living; and moderate difficulties both in social functioning, and in concentration, persistence, and pace; and has not had repeated episodes of decompensation. Id. As Plaintiff's argument implies, the ALJ found that Plaintiff "has been homeless for many years, but has been able to utilize public shelters and bus transportation. He is admittedly independent in self care and able to perform household chores. He shops and manages his own money." (R. 31) (citing Ex. 6E).

Plaintiff claims the ALJ's findings are "an improper medical conclusion based on selected references in the record–not from any medical diagnosis or opinions." (Pl. Br. 17) (citing Archer v. Astrue, 2009 WL 1974241, at *4-5). However, the record contains repeated occurrences of evidence to support the ALJ's assertion that although Plaintiff is homeless, he uses public shelters, and bus transportation, and is independent in self-care, and performs household chores at the shelters. E. g., (R. 141, 142, 224-26, 349-50, 403). It is the ALJ's responsibility to make findings (conclusions) based upon the record evidence. Plaintiff's brief does not point to evidence which is contrary to or which precludes the conclusions reached by the ALJ. Evidence that Plaintiff is poorly groomed or has long hair or a long, bushy mustache and beard cannot, by itself, negate the ALJ's finding of ability to perform self-care.

Findings regarding activities of daily living are not specifically medical determinations, and the Commissioner's Psychiatric Review Technique for evaluating the severity of mental impairments makes it the ALJ's duty to evaluate the severity of a

claimant's limitations in four broad areas of mental functioning including activities of daily living, and to include a specific finding in his decision as to the degree of limitation in each of those functional areas. 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2). That is what the ALJ did here. Moreover, Plaintiff does not cite, and the court is unaware of any binding precedent which requires the ALJ to rely only upon medical diagnoses or medical opinions in reaching his conclusions regarding a claimant's limitations in the four broad areas of mental functioning.

The Archer case to which Plaintiff cites is a decision from the District of Colorado, and is not binding upon this court. In Archer, the court found that the activities to which the ALJ referred do "not translate into findings that are relevant to the Listings or to the ALJ's findings that Plaintiff had only mild to moderate difficulties." Archer, 2009 WL 1974241, at *4. In this case, however, the activities which the ALJ cited are record evidence upon which the ALJ properly relied to support his finding that Plaintiff has only mild restrictions in activities of daily living. As such, they are clearly relevant to the paragraph B criteria of Listing 12.03. In Archer, the court found that "The ALJ did not discuss or even reference Plaintiff's schizophrenia or discuss why the evidence in the record regarding Plaintiff's schizophrenia failed to meet the requirements of Listing 12.03." Id. Here, on the other hand, the ALJ specifically discussed Plaintiff's schizophrenia (R. 29-30), and dedicated nearly two pages in his decision to explaining why the record evidence demonstrates that Plaintiff's condition failed to meet the criteria of Listing 12.03. (R. 31-32). The Archer court noted, "there was evidence in the record

during this period that the ALJ ignored which showed that the schizophrenia was more severe than noted by the ALJ and which could satisfy certain Listing requirements." Archer, 2009 WL 1974241, at *5. Here, the court finds no evidence ignored by the ALJ which shows a greater severity than found by the ALJ, and it finds no record evidence which suggests that Plaintiff's condition satisfies any Listing requirement. Finally, the Archer court noted, "The treating physician's Medical Source Statement was also not properly evaluated." Id. As will be discussed more fully below, the court finds no error in the ALJ's evaluation of the treating physician's medical source statement in this case. Therefore, although both the Archer case and this case relate to an ALJ's finding that a claimant's condition does not meet the criteria of Listing 12.03, that is where the similarity ends. The decision in Archer does not support Plaintiff's argument.

Plaintiff's second argument (that the ALJ improperly used Plaintiff's minimal daily activities to show that Plaintiff's condition does not meet or equal a listing) is similarly off point. Plaintiff cites Byron, 742 F.2d at 1235, for the proposition that an ability to perform minimal daily activities (or "sporadic diversions") does not establish that a claimant is capable of working. He concludes that the holding in Byron "implies that 'sporadic diversions' do not establish whether a claimant's impairments meet or equal the Listings." (Pl. Br. 17) (citing Byron, 742 F.2d at 1235). The court agrees with Plaintiff that the law in the Tenth Circuit has long been that the ability to perform minimal daily activities or "sporadic diversions" does not establish the capacity for work. E.g., Byron, 742 F.2d at 1235 (citing Broadbent v. Harris, 698 F.2d 407 (10th Cir. 1983));

Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain."); Frey v. Bowen, 816 F.2d 508, 516-17 (10th Cir. 1987) ("sporadic performance does not establish that a person is capable of engaging in substantial gainful activity").

However, it does not follow that minimal activities (or "sporadic diversions") cannot be used to show that a claimant's activities of daily living are only mildly limited. Plaintiff's only support for his argument is counsel's assertion that the Tenth Circuit's holding in Byron that minimal daily activities do not establish the capacity for work implies an identical holding "that 'sporadic diversions' do not establish whether a claimant's impairments meet or equal the Listings." (Pl. Br. 17). The court does not agree. Many claimants are found disabled at step five even though it has been found at step three that their condition does not meet or equal a Listing. More than that, it is possible for a claimant's condition to be found to meet or equal a Listing for a mental impairment even though that claimant might have only mild limitations in activities of daily living. For example, two of the other paragraph B criteria might be met, or the paragraph C criteria might be met. The court is unconvinced by Plaintiff's argument.

Finally, the court notes that even if it were to accept the implications of Plaintiff's argument–that Plaintiff has marked restrictions in activities of daily living–that fact would not change the ALJ's decision that Plaintiff's condition does not meet or equal the severity of Listing 12.03. This is so because Plaintiff has not shown, or even alleged, that any other paragraph B criterion is met--that Plaintiff has had repeated episodes of

10

decompensation, or has marked difficulties in maintaining social functioning, or has marked difficulties in maintaining concentration, persistence, or pace. Plaintiff has shown no error in the ALJ's step three findings.

## IV.    Evaluation of Dr. Shaikh's Medical Opinion

Plaintiff claims two errors in the ALJ's evaluation of Dr. Shaikh's medical opinion. He argues that the opinion should have been accorded controlling weight, and that the ALJ also failed to provide specific, legitimate reasons for giving less-than-substantial weight to Dr. Shaikh's opinion. Plaintiff cites record evidence, and explains why in his view Dr. Saikh's opinion should have been accorded controlling weight. Plaintiff argues that the ALJ should have explained specifically how the record evidence supports his findings, and that a reviewing court may not supply post hoc rationalizations for the ALJ's decision, and implies that a court may not rely upon record evidence which supports the ALJ's decision but which was not specifically cited by the ALJ in that regard. The Commissioner argues that the ALJ properly determined not to give controlling weight or substantial weight to Dr. Shaikh's opinion, and provided good, legitimate reasons for not giving substantial weight to the opinion.

### A.    Standard for Evaluating a Treating Source Opinion

A physician who has treated a patient frequently over an extended period of time is expected to have great insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). "The regulations and agency rulings give guidance on the framework an ALJ

should follow when dealing with treating source medical opinions." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (citing 20 C.F.R. § 404.1527(d)(2) and Social Security Ruling (SSR) 96-2p). The ALJ first considers whether the opinion is worthy of controlling weight. Id. That inquiry is two-pronged, first the ALJ determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. (quoting SSR 96-2p). If the opinion is well-supported, he must then determine whether "the opinion is consistent[1] with other substantial evidence in the record." Id. (citing SSR 96-2p). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id. (emphasis added).

SSR 96-2p, cited by the court in Watkins, explains that the term "substantial evidence" as used in determining whether a treating source opinion is worthy of "controlling weight" is given the same meaning as determined by the Court in Perales, 402 U.S. at 401. SSR 96-2, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2010) ("Giving Controlling Weight to Treating Source Medical Opinions"). As the Ruling explains, evidence is "substantial evidence" precluding the award of "controlling weight," if it is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." Id.

---

[1]Both SSR 96-2p and the Commissioner's regulations phrase the second prong of the inquiry in the negative: an opinion may be given controlling weight only if it is "not inconsistent with the other substantial evidence" in the record. SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 112 (Supp. 2010) (emphasis added); and 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (emphasis added).

If the treating source opinion is not given controlling weight the inquiry does not end. <u>Watkins</u>, 350 F.3d at 1300. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." <u>Id.</u> Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. <u>Id.</u> at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); <u>see also</u> <u>Drapeau v. Massanari</u>, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing <u>Goatcher v. Dep't of Health & Human Servs.</u>, 52 F.3d 288, 290 (10th Cir. 1995)).

After considering these factors, the ALJ must give reasons in the decision for the weight he assigns the treating source opinion. <u>Id.</u> 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." <u>Id.</u> (citing <u>Miller v. Chater</u>, 99 F.3d 972, 976 (10th Cir. 1996) (quoting <u>Frey v. Bowen</u>, 816 F.2d 508, 513 (10th Cir. 1987)).

## B.     Controlling Weight

Plaintiff argues that Dr. Shaikh's opinion is based on medically acceptable diagnostic techniques because the ALJ never questioned Dr. Shaikh's schizophrenia

diagnosis, and although Dr. Shaikh conceded he did not perform any neuropsychological

testing, the record contains nothing to indicate Dr. Shaikh's opinion was not based on

such diagnostic techniques. (Pl. Br. 7-8). He argues that Dr. Shaikh's opinion is not

inconsistent with other substantial evidence in the record because it "does not entirely

conflict with Dr. Boll's evaluation," and is not inconsistent with records from other

treating sources, and that the GAF[2] score of 35 assigned by Dr. Shaikh is not inconsistent

with other scores in the record. (Pl. Br. 8-13). The Commissioner argues that the ALJ

properly declined to accord controlling weight to Dr. Shaikh's opinion because the

opinion is inconsistent with Dr. Shaikh's treatment notes. (Comm'r Br. 6).

The ALJ explained why he did not accord controlling weight to Dr. Shaikh's

opinion, and stated two reasons for the determination: "[(1)] Dr. Shaikh's opinion is not

supported by his objective treatment notes. [(2)] The GAF of 35 is much more restrictive

---

[2] A Global Assessment of Functioning, or GAF, score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 32 (4th ed. text revision 2000). The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). Id. at 34. GAF is a classification system providing objective evidence of a degree of mental impairment. Birnell v. Apfel, 45 F. Supp. 2d 826, 835-36 (D. Kan. 1999) (citing Schmidt v. Callahan, 995 F. Supp. 869, 886, n.13 (N.D. Ill. 1998)).

A GAF score in the range from 31 to 40 indicates "**Some impairment in reality testing or communication** (e.g., speech is at times illogical, obscure, or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." DSM-IV-TR at 34 (emphasis in original).

than the GAF reflected in his treatment notes. Therefore, Dr. Shaikh's opinion has not been given controlling weight." (R. 36) (numbering added). The threshold for denying controlling weight is low. <u>Cook v. Astrue</u>, 554 F. Supp. 2d 1241, 1245 (D. Kan. 2008); <u>Fritzson v. Astrue</u>, No. 07-4137-JAR, 2009 WL 801796, *7 (D. Kan. Mar. 25, 2009); <u>Cann v. Astrue</u>, No. 08-4018-SAC, 2009 WL 536565, *10 (D. Kan. Mar. 3, 2009). The ALJ need only point to evidence which is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the [treating source's] medical opinion." SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2010). This standard is met here, as the ALJ found, at least because Dr. Shaikh's treatment notes reflect a GAF score which is inconsistent with the GAF score of 35 reflected in Dr. Shaikh's opinion. The ALJ specifically noted that Dr. Shaikh assigned a GAF score of 45[3] on January 17, 2007 when Plaintiff began seeing him. (R. 35); <u>see also</u> (R. 325). This is relevant evidence which might support a conclusion that Plaintiff's condition is not as severe as a GAF score of 35 would suggest. As such, the determination not to accord controlling weight is justified.

Plaintiff's argument "that the GAF score of 35 represents a steady decline in Weber's mental functioning during his treatment with Dr. Shaikh and the other psychiatrists at ComCare" (Pl. Br. 12), does not compel a different finding. Plaintiff

_____

[3]A GAF score in the range of 41-50 indicates "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." DSM-IV-TR at 34.

points to record evidence in support of this argument, and presents a view of the evidence

in which he asserts that Plaintiff's GAF score steadily declined from 52 during intake at

ComCare to 40 at his last visit with Dr. Shaikh.  Id. at 12-13.  He concludes, "Ultimately,

Dr. Shaikh further decreased Weber's GAF score to 35 just before the hearing."  Id. at 13.

However, neither Dr. Shaikh nor the other providers at ComCare stated that Plaintiff's

mental function was in a steady decline.  Dr. Shaikh explained his mental RFC

assessment, but did not mention a steady decline in Plaintiff's functioning.  (R. 477).

Plaintiff's argument forgets the standard upon which judicial review is based.  The

court may not reweigh the evidence or substitute its judgment for that of the

Commissioner.  Frantz v. Astrue, 509 F.3d 1299, 1300 (10th Cir. 2007); Hackett, 395

F.3d at 1172; White, 287 F.3d at 905.  The starting point in the court's review however, is

the rationale presented in the Commissioner's decision and not what another party, or

even the court, might view as a "proper" weighing of the evidence.  42 U.S.C. § 405(g).

The mere fact that there is evidence which might support a finding contrary to that of the

ALJ will not establish error in the ALJ's determination.  "The possibility of drawing two

inconsistent conclusions from the evidence does not prevent an administrative agency's

findings from being supported by substantial evidence.  We may not displace the

agency's choice between two fairly conflicting views, even though the court would

justifiably have made a different choice had the matter been before it de novo."  Lax, 489

F.3d at 1084 (citations, quotations, and bracket omitted); accord, Cruse v. Bowen, 867

F.2d 1183, 1184 (8th Cir. 1989) (citing Consolo v. Fed. Maritime Comm'n, 383 U.S. 607,

620 (1966)).  The ALJ's reason (2) is supported by substantial evidence in the record as a whole, and the record evidence does not compel a different finding.  Plaintiff should focus on pointing out error in the Commissioner's analysis, not on explaining what in his view a "proper" analysis would reveal.

Plaintiff's next argument, that Dr. Boll's opinion is "not entirely inconsistent" with Dr. Shaikh's opinion, recognizes that the two opinions are at least somewhat inconsistent, and thereby supports the ALJ's decision not to accord Dr. Shaikh's opinion controlling weight.  By arguing that Dr. Boll's opinion is "not _entirely_ inconsistent" with Dr. Shaikh's opinion, Plaintiff admits that the opinions _are_ inconsistent.  Therefore, Dr. Shaikh's opinion fails to meet the requirement that it be "not inconsistent" with the other substantial evidence in the case record if it is to be accorded controlling weight.  Plaintiff does not, and cannot, argue that Dr. Boll's opinion is not substantial evidence--that it is not "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion."  Perales, 402 U.S. at 401.  More is not required to refuse controlling weight.  The ALJ properly declined to accord controlling weight to Dr. Shaikh's opinion.

### C. Less-Than-Substantial Weight

Plaintiff argues that "the ALJ failed to provide specific reasons for disregarding Dr. Shaikh's opinion."  (Pl. Br. 13).  He goes on to explain that the ALJ "failed to provide good reasons for his determination that Dr. Shaikh's opinion is worthy of less than substantial weight," because he never identified the specific inconsistencies upon which he relied in discounting Dr. Shaikh's opinion.  (Pl. Br. 14).  The Commissioner argues,

"To the contrary, the ALJ provided good, legitimate reasons for not giving Dr. Shaikh's opinions substantial weight." (Comm'r Br. 7). The Commissioner points to record evidence which supports the ALJ's determination. Id. at 7-12.

The ALJ considered what less-than-controlling weight Dr. Shaikh's opinion should be accorded, and he stated eight reasons for giving the opinion less-than-substantial weight, in addition to the two reasons previously given for not according the opinion controlling weight.

> Since it cannot be entitled to controlling weight, Dr. Shaikh's opinion must be analyzed to determine the appropriate weight that it can be given. [(3)] Dr. Shaikh is a psychiatrist [(4)] who had treated the claimant [(5)] once a month [(6)] for 5 months prior to the issuance of this opinion. [(7)] He did not provide therapy, but [(8)] only saw the claimant for 30 minute medication management sessions. Not only is his opinion [(1)] inconsistent with his documented findings, but it is [(9)] contradicted by the findings of other treating and [(10)] examining mental health sources. Therefore, it has not been given substantial weight.

(R. 36) (numbering added). The decision reveals that, contrary to Plaintiff's argument, the ALJ gave ten specific reasons for discounting Dr. Shaikh's opinion. (1) The opinion is not supported by Dr. Shaikh's treatment notes. (2) The GAF score assigned in Dr. Shaikh's opinion (35) is more restrictive than the GAF reflected in his treatment notes (45). (3-6) Dr. Shaikh is a treating psychiatrist who treated Plaintiff once a month but only for five months before forming the opinions at issue. (7-8) Dr. Shaikh only provided medication management, and no therapy for Plaintiff. And, (9-10) Dr. Shaikh's opinion is inconsistent with the findings of both treating and examining mental healthcare providers. As discussed in the previous section of this opinion, reason (2) is supported by

substantial evidence. Reasons (3-8) reflect the ALJ's consideration of the regulatory factors for weighing medical opinions, and are supported by Dr. Shaikh's treatment notes as cited by the ALJ. (R. 36) (citing Ex. 13F/1-14) (R. 312-25). Therefore, seven of the ALJ's reasons for discounting Dr. Shaikh's opinion are without question supported by substantial evidence in the record as specifically cited by the ALJ in the same portion of the decision in which he explained those reasons.

Therefore, the point of Plaintiff's argument (that the ALJ did not identify the specific inconsistencies upon which he relied in discounting Dr. Shaikh's opinion), is that the ALJ did not identify specific record evidence to support his reasons (1), (9), and (10)–that Dr. Shaikh's opinion is not supported by his own treatment notes, and is contradicted by other treating and examining mental healthcare sources. Plaintiff argues that the Commissioner's decision must be evaluated based only upon the rationale provided in the decision, and that the court may not support the ALJ's findings by citing evidence not specifically cited by the ALJ because such action usurps the agency's function of "weighing and balancing" the evidence and constitutes improper post hoc rationalization of the decision. (Pl. Br. 14-15) (citing SEC v. Chenery Corp., 318 U.S. 80 (1943); Carpenter v. Astrue, 527 F.3d 1264, 1267 (10th Cir. 2008); Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005); Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); and Youngblood v. Astrue, Civ. A. No. 08-2607-KHV-GBC, WL 4611459, *4-5 (D. Kan. Dec. 4, 2009)). Plaintiff concludes his argument, "Here, the ALJ forces this Court to speculate which inconsistencies, if any, exist between Dr. Shaikh's opinion and the

record. But this Court may not reweigh the evidence or speculate as to the ALJ's rationale. As a result, reversal and remand are necessary for a proper explanation of the ALJ's rationale." (Pl. Br. 15) (citation omitted). Nonetheless, the court finds substantial evidence in the record as a whole supports the ALJ's determination to accord less-than-substantial weight to Dr. Shaikh's opinion.

The court agrees with plaintiff that it may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman, 511 F.3d at 1272 (quoting Casias, 933 F.2d at 800); accord, Hackett, 395 F.3d at 1172. Moreover, it may not properly weigh the evidence in the first instance. Neil v. Apfel, No. 97-7134, 1998 WL 568300 at *3 (10th Cir. Sept. 1, 1998). And, as Plaintiff suggests, an ALJ's decision should be evaluated based solely on the rationale presented in the decision. Robinson, 366 F.3d at 1084. A reviewing court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision. Grogan, 399 F.3d at 1263. By considering legal or evidentiary matters not considered by the ALJ, a court risks violating the general rule against post hoc justification of administrative action recognized in Chenery. Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004). Nonetheless, when the ALJ has, in fact, considered the legal and evidentiary matters and has stated his rationale in his decision, the court is required to determine whether substantial evidence on the record as a whole supports the ALJ's consideration and the rationale provided. E.g., Frantz, 509 F.3d at 1300 (quoting Castellano v. Sec'y of Health & Human Servs., 26 F.3d 1027, 1028 (10th Cir. 1994));

20

Howard v. Barnhart, 379 F.3d 945, 947 (10th Cir. 2004); Haddock, 196 F.3d at 1087; Fowler v. Bowen, 876 F.2d 1451, 1453 (10th Cir 1989).

As Plaintiff's argument implies, the ALJ did not state each reason for discounting Dr. Shaikh's opinion and then list all the evidentiary bases supporting that reason. However, an ALJ need not cite record evidence supporting every assertion made in the decision. What he must do is provide a rationale for his decision which is reviewable by the court. Fischer-Ross v. Barnhart, 431 F.3d 729, 734 (10th Cir. 2005). Here, the ALJ's rationale is apparent from the decision, and it is not a post hoc rationalization for the court to acknowledge record evidence supporting the ALJ's stated rationale, even if a particular piece of evidence was not cited by the ALJ. Grogan, 399 F.3d at 1263 (reviewing court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision).

The Youngblood case, cited in Plaintiff's brief, does not require a different conclusion. There, the court found that reasons given by the ALJ for discounting the treating source opinion were "merely conclusory findings which the ALJ ha[d] not supported with rationale, example, or evidence." Youngblood, WL 4611459, at *4. Here, although the ALJ did not cite specific evidence in direct relation to every reason given for discounting Dr. Shaikh's opinion, he did provide a complete rationale for his determination which is reviewable by the court. The court is not required to speculate regarding the rationale for the decision. Moreover, the ALJ summarized the record evidence in his decision, and the court is not required to weigh the evidence to determine

what the ALJ's rationale was in making his determinations.  The court merely has to review the decision and "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been made."  Wall, 561 F.3d at 1052 (quoting Flaherty v. Astrue, 515 F.3d 1067, 1070 (10th Cir. 2007)).  Plaintiff has not cited, and the court has not found, record evidence overlooked or ignored (and hence not weighed) by the ALJ which would preclude the findings reached by the ALJ in making his determinations.

Reason (1) for discounting Dr. Shaikh's opinion was that it is not supported by Dr. Shaikh's treatment notes.  The ALJ summarized Dr. Shaikh's treatment notes beginning on January 17, 2007 when he first saw Plaintiff and assigned a GAF score of 45:

> His treatment notes reflect the claimant's alert and cooperative manner, lack of abnormal movements, normal speech and articulation, intermittent anxiety, congruent effect, full orientation, intact memory, attention, and concentration, and logical thought form.  The claimant sometimes exhibited slow responses, but denied suicidal and homicidal ideation, paranoid delusions, impulsivity, and obsessions/compulsions.  The claimant's cognitive functions appeared to be at baseline and insight and judgment were fair.  Cannabis abuse was not shown to be in remission.  The claimant reported in February, 2007, during cold weather, that he was nervous at the mission because there were too many unfamiliar people in the mornings.  He stated that mood swings and irritability were in control (with mood swing occurring only occasionally), that he was attending groups, and that he no longer had difficulty falling asleep.  He stated that he occasionally felt paranoid at the shelter.  He denied medication side effects, but admitted not being very compliant with medication.

(R. 35-36) (citing Ex. 13F/1-14 (R. 312-25)).  Plaintiff does not, and cannot, contest the ALJ's characterization of Dr. Shaikh's treatment notes.  The court finds it is supported by the record evidence.

The ALJ also summarized Dr. Shaikh's opinion, noting his opinion that Plaintiff's "alcohol and marijuana dependence is in full remission and does not exacerbate the claimant's symptoms." (R. 35). The ALJ noted that Dr. Shaikh assigned a GAF score of 35, and found Plaintiff markedly limited in four mental activities "and moderately limited in most other areas." Id. In fact, of twenty mental activities described in the Mental RFC form completed by Dr. Shaikh, the psychiatrist found Plaintiff markedly limited in four, moderately limited in fourteen, and "not significantly limited" in only two activities–"the ability to ask simple questions or request assistance," and "the ability to accept instructions and respond appropriately to criticism from supervisors." (R. 475-76). Even the most cursory review of the record must conclude that Dr. Shaikh's treatment notes do not support the severity presented in his opinion. Substantial evidence in the record supports reason (1) for discounting Dr. Shaikh's opinion.

As reason (9), the ALJ found that Dr. Shaikh's opinion is contradicted by other treating mental healthcare sources. (R. 36). The Commissioner points to the treatment records of Dr. Ludvigson and Dr. Shah as evidence supporting reason (9). The court agrees. Dr. Ludvigson assigned GAF scores of 50 at four visits and 45 at one visit (R. 328, 331, 334, 337, 340), and at two visits the psychiatrist noted that Plaintiff smelled (at one visit Dr. Ludvigson used the term "reeks") of alcohol, but that Plaintiff stated he only drinks an occasional beer. (R. 332, 335). The GAF scores assigned by Dr. Ludvigson are indeed inconsistent with the score of 35 assigned by Dr. Shaikh, and the revelations

regarding alcohol are inconsistent with Dr. Shaikh's opinion that Plaintiff's alcohol dependence is in full remission.

As the ALJ found and as the Commissioner argues, Dr. Shah's treatment notes during the relevant period after Plaintiff's alleged onset on June 1, 2000 are also inconsistent with Dr. Shaikh's opinion of significant limitations. Those notes reveal that Dr. Shah assigned a GAF score of 45 (R. 258), that Plaintiff did a lot of walking (R. 247, 249-51), that Plaintiff went to the "drop-in center," and volunteered at "His Helping Hands" (R. 256-57), and that Plaintiff was looking for a job. (R. 254). Again, the GAF score assigned by Dr. Shah is inconsistent with Dr. Shaikh's opinion, and the activities reported are inconsistent with the severe mental limitations opined by Dr. Shaikh. Plaintiff asserts that Dr. Shah's and Dr. Ludvigson's treatment notes are consistent with Dr. Shaikh's opinion, but cites no specific evidence which compels such a finding. Reason (9) is supported by substantial evidence in the record.

Because Dr. Boll is the only non-treating source[4] who opined regarding Plaintiff's limitations, the court must necessarily address Plaintiff's final argument (that the ALJ failed to explain why Dr. Boll's opinion is entitled to substantial weight) when it considers reason (10) for discounting Dr. Shaikh's opinion–that Dr. Shaikh's opinion is inconsistent with that of <u>examining</u> mental healthcare sources. Therefore, it considers both issues together in the next section of this opinion.

---

[4]A psychologist who examined, but did not treat, claimant. 20 C.F.R. § 404.1502.

## V.    Evaluation of Dr. Boll's Opinion

The ALJ summarized the opinion of Dr. Boll:

> Consulting psychological examiner Dr. Boll stated that the claimant appeared able to comprehend and follow simple instructions, perform simple, routine, repetitive tasks, concentrate on appropriate assigned tasks, maintain reasonable work attendance standards, and relate adequately with others in an accepting and supportive environment.  Dr. Boll opined that the claimant would have difficulty dealing with a more authoritarian or critical supervisor, but should be able to deal with work pressures in an appropriate and emotionally adaptive way and exercise acceptable judgments concerning work functions as long as he remained on psychotropic medications and assuming there was no interference from substance abuse.

(R. 36).  He concluded his analysis by stating two reasons for assigning substantial weight to Dr. Boll's opinion:  It is based on medically acceptable diagnostic methods, and it is consistent with the findings of treating mental healthcare sources.  Id.

Plaintiff claims this is error because the ALJ failed to consider factors detracting from Dr. Boll's opinion, and never cited record evidence supporting his finding that the opinion is consistent with records of treating mental healthcare sources.

When a treating source opinion is not accorded controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with the regulatory factors discussed above.  20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2010).  The opinion of a non-treating source (such as Dr. Boll) "is not entitled to the sort of deferential treatment accorded to a treating physician's opinion."  Doyal, 331 F.3d at 763.  However, opinions of non-treating sources

are generally given more weight than the opinions of non-examining sources who have merely reviewed the medical record. Robinson, 366 F.3d at 1084.

Plaintiff's argument that the ALJ failed to properly consider regulatory factors is without merit. In stating that Dr. Boll was a "Consulting psychological examiner," the ALJ specifically addressed regulatory factors 1 (examining relationship), 2 (treatment relationship), and 5 (specialization). His findings regarding diagnostic methods, and consistency with the notes of treating mental healthcare sources reflect consideration of regulatory factors 3 (supportability) and 4 (consistency). The ten reasons given for discounting Dr. Shaikh's opinion and for not according it controlling weight, supra at 15-24, also reveal that the ALJ weighed the medical opinions in accordance with the regulatory factors. Moreover, the ALJ stated that he had "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p." (R. 33). The ALJ specifically acknowledged that Dr. Boll was a non-treating source who examined Plaintiff only once, and that Dr. Shaikh was a treating source who treated plaintiff five times and provided medication management but not therapy. (R. 35-36). He also noted the course of Plaintiff's mental health treatment, that Plaintiff had a lapse in treatment with Dr. Shah from 1999-2004, that Plaintiff initiated treatment at ComCare in October, 2003, attended therapy in November, 2005, treatment lapsed until March, 2006, and that Dr. Shaikh began as Plaintiff's new psychiatrist in January, 2007 and had monthly visits till May 2007. (R. 29-30, 35-37).

Plaintiff's argument that Dr. Boll did not have the benefit of evaluating Plaintiff's condition when he was receiving regular mental health treatment is essentially a repeat of the argument that Plaintiff's condition was steadily declining from the time he began treatment with ComCare until Dr. Shaikh assigned a GAF score of 35. As the court found above, neither Dr. Shaikh, nor any other medical source stated that opinion. The ALJ stated his findings in this regard, and substantial evidence in the record supports those findings. Neither the court nor Plaintiff may impose his view of the evidence over that of the ALJ absent substantial evidence in the record which precludes the finding made by the ALJ. Lax, 489 F.3d at 1084; Cruse, 867 F.2d at 1184; accord, Consolo v. Fed. Maritime Comm'n, 383 U.S. at 620.

Finally, the court addresses the related reasons given by the ALJ both for according substantial weight to Dr. Boll's opinion (it is consistent with the findings of treating healthcare sources), and for discounting Dr. Shaikh's opinion ((10) it is not supported by examining mental healthcare sources). Dr. Boll's opinion as summarized by the ALJ is consistent with the treatment records of Dr. Ludvigson and Dr. Shah, who were both Plaintiff's treating physicians at times during the period at issue here. This is substantial evidence in the record as a whole supporting the ALJ's determination to accord substantial weight to Dr. Boll's opinion.

Despite Plaintiff's assertion that "Dr. Shaikh's opinion does not entirely conflict with Dr. Boll's evaluation," and that the doctors' reports "are not entirely inconsistent" (Pl. Br. 9), it is abundantly clear from the record evidence discussed herein that Dr. Boll's

opinion does not support the significant limitations opined by Dr. Shaikh. Not surprisingly, the reports of the two doctors do contain many similarities. After all, both reports are discussing the mental health condition of the same individual within a three-year time frame. However, Dr. Shaikh found Plaintiff markedly limited in four out of twenty mental activities, and moderately limited in fourteen of the remaining sixteen mental activities. Dr. Boll, found Plaintiff has mental limitations, but on the other hand, he found Plaintiff able to perform simple, routine, repetitive tasks; found no significant problems with concentration; found him able to maintain reasonable attendance standards; found him able to relate adequately with others; and found him able to deal with work pressures in the appropriate circumstances. (R. 226). The court finds that reason (10) given by the ALJ for discounting Dr. Shaikh's opinion is supported by substantial evidence in the record as a whole.

As Plaintiff points out, the opinion of a treating source is worthy of deference, and is generally worthy of greater weight than the opinion of a non-treating source. However, in this case the ALJ weighed the opinions and articulated ten reasons for discounting the opinion of the treating source, Dr. Shaikh. Each of those ten reasons is supported by substantial evidence in the record. The ALJ also considered the opinion of the consultative examiner, Dr. Boll, and provided two reasons supported by substantial evidence in the record for according substantial weight to that opinion. The court finds that the ALJ provided specific, legitimate reasons to discount the opinion of the treating physician, and applied the correct legal standard to evaluating the medical opinions. His

decision to accord substantial weight to the opinion of Dr. Boll is also supported by substantial evidence in the record as a whole.

Plaintiff has shown no error in the Commissioner's decision.

**IT IS THEREFORE ORDERED** that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 9th day of December 2010, at Kansas City, Kansas.


s/ John W. Lungstrum          
**John W. Lungstrum**
**United States District Judge**